**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CHARLES E. ASKEW**                                                              **PLAINTIFF**

**v.**                                 **Case No. 4:19-CV-114 (DPM)**

**ROCK REGION METROPOLITAN;**                         **DEFENDANTS**
**TRANSIT AUTHORITY; CHARLES
FRAZIER; CHARLES JACKSON;
DONNA BOWERS; and WILSON VAUGHN**

**BRIEF IN SUPPORT OF EXPEDITED MOTION FOR
RESTRAINING ORDER AND SANCTIONS**

Defendants Rock Region Metropolitan Transit Authority ("METRO"), Charles Frazier, Donna Bowers, Charles Jackson Wilson Vaughn (collectively, "Defendants"), by and through their undersigned counsel, CROSS, GUNTER, WITHERSPOON & GALCHUS, P.C., and for their Brief in Support of Expedited Motion for Restraining Order and Sanctions, state:

### I.    INTRODUCTION

On April 23, 2019, Plaintiff Charles Askew—in the course of pursuing a pernicious campaign of telephone harassment against multiple named Defendants—threatened to kill Charles Frazier. Mr. Askew specifically made this threat in the course of placing one out of **one-hundred thirty-five** (135) telephone calls to Mr. Frazier during the period of April 18, 2019 and April 25, 2019. Plaintiff is already the subject of a no-contact order that prevents him from contacting at least one METRO employee and from entering one of its properties. Defendants respectfully and urgently request that the Court enter a reciprocal Order prohibiting Plaintiff from contacting any METRO employee or property, together with severe and terminating sanctions.

## II.     Factual Background[1]

Mr. Askew, a former passenger of METRO's transit services, has a history of making serious threats against METRO's employees. For instance, in June 2017, Mr. Askew threatened to "go homicidal" on METRO's employees after bragging about allegedly "beating" murder charges. *ECF No. 2*, at P. 13. In October 2018, after a METRO operator asked Mr. Askew not to disrobe on the bus, Mr. Askew threatened to kill the operator. *Id.* at P. 12. More recently, on March 22, 2019, Mr. Askew concluded his Response to Defendants' Motion for More Definite Statement as follows: "**Justice or death[.] I mean it from the dept[h]s of my soul**, F.B.I. Don't play games, they know [I] am mad." *ECF No. 21*, at P. 8 (emphasis added).

Currently, Mr. Askew faces criminal charges for disorderly conduct, trespass, and terroristic threatening in connection with actions he took against METRO and its employees (including Floyd Bibbs, a bus operator) on March 2, 2019.[2] **Exhibit 1**, Docket Report - *State v. Charles E. Askew*, Case No. LRCR-19-1058 (Little Rock District Court – Criminal Division); **Exhibit 2**, Police Report – Incident No. 2019-026560 (March 2, 2019). In connection with this episode and the charges pending against him, the Judge Melanie Martin of the Little Rock District Court issued a No-Contact Order prohibiting Plaintiff from (1) contacting Mr. Bibbs "directly or indirectly, whether in person, by telephone, computer, mail, or any other means," (2) possessing a firearm or other weapon, and (3) entering METRO's property located at 310 E. Capitol Avenue. **Exhibit 3**, No-Contact Order.

Apparently, neither the pending charges nor the No-Contact Order sufficiently deterred Mr. Askew from engaging in a campaign of harassment, threats, and insults against METRO and

---

[1] The Court previously acknowledged its familiarity with the parties' "long-running dispute" (*ECF No. 24*, at ¶ 3), and as such, this Section simply provides a summary of the most pertinent facts underlying this Motion.

[2] Plaintiff's criminal trial is currently set for May 9, 2019.

its employees. Specifically, in the last week, Mr. Askew called METRO's Executive Director, Charles Frazier, on one-hundred thirty-five (135) separate occasions. **Exhibit 4**, Affidavit of Charles Frazier; **Exhibit 5**, Contemporaneous Telephone Log of C. Frazier. Several calls, belligerent and rife with obscenities, related to Plaintiff's suspension from using METRO's services. *Frazier Aff.* ¶¶ 11–12. Others—similar in bellicosity—related to this litigation and to Mr. Askew's criminal trial. These calls were disruptive to METRO's operations and obviously concerning to Mr. Frazier. *Id.* at ¶ 11.

In one call, however, Plaintiff threatened to kill Mr. Frazier. *Id.* at ¶ 13. This call was, and is, frightening. *Id.* at ¶ 14. Defendants ask the Court to take expedited action to protect their persons and property, and to issue appropriate, terminating sanctions against Mr. Askew's lawsuit.

### III.   ARGUMENT

A.   **The Court Should Enter a Restraining Order Under the Arkansas Workplace Prevention Statute Against Plaintiff on an Expedited Basis.**

In an effort to protect their health, safety, and wellbeing, Defendants—pursuant to the Arkansas Workplace Violence Prevention (AWVP) statute—move for the entry of an order restraining Plaintiff from contacting them (except through counsel) and/or from otherwise entering their home and work-related properties. The AWVP's substantively provides as follows:

> (a) If an employer or an employer's employee or invitee has:
> . . .
> (2) **Received a threat of violence by an individual which can reasonably be construed as a threat which may be carried out at the work site** as defined by § 5-13-301, terrorist threatening; § 5-38-202, threatening a catastrophe; §§ 5-13-204--5-13-207, assault; or §§ 5-26-304--5-26-306, domestic battering; or
>
> (3) **Been stalked or harassed at the work site** as defined by § 5-71-213, loitering; § 5-39-203, criminal trespass; **§ 5-71-208, harassment**; or § 5-71-229, stalking,

the employer may, in addition to, or instead of, filing criminal charges against the individual, seek a temporary restraining order, a preliminary injunction, or an injunction under Arkansas Rule of Civil Procedure 65 prohibiting further unlawful acts by that individual at the work site, which shall include any place at which work is being performed on behalf of the employer.

(b)(1) Proof by a preponderance of the evidence of any action described in subsection (a) of this section shall constitute irreparable harm or damage to the employer or employer's employee or invitee.

(2) Upon the granting of any restraining order, preliminary injunction, or injunction, the court may, among other appropriate orders:

(A) Order the defendant not to visit, assault, molest, or otherwise interfere with the employer or the employer's operations or the employer's employee or invitee at the employer's work site;

(B) Order the defendant to cease stalking the employer's employee or invitee at the employer's work site;

(C) Order the defendant to cease harassment of the employer or the employer's employee or invitee at the employer's work site;

(D) Order the defendant not to abuse or injure the employer, including the employer's property, or the employer's employee or invitee at the employer's work site;

(E) **Order the defendant not to telephone the employer or the employer's employee or invitee at the employer's work site**; or

(F) Such other necessary and appropriate relief as is deemed appropriate in the discretion of the court.

. . .

(d) Unless specifically modified or terminated by the issuing judge, all orders and injunctions issued under this section shall have statewide validity and may be enforced by the issuing court for any violation anywhere in the state and by any court of competent jurisdiction within the state for violations which may occur within that court's jurisdiction.

. . .

(f) Unless lack of good faith is shown by clear and convincing evidence, an employer and an employer's agents who act in accord with this section shall be presumed to be acting in good faith and are immune from civil liability for actions taken under this section.

ARK. CODE ANN. § 11–5–115(a)-(f) (emphasis added). Under the Arkansas code, "harassment" is defined as a person engaging in conduct or repeatedly committing "an act that alarms or seriously annoys another person and that serves no legitimate purpose." ARK. CODE ANN. § 5–71–208(a)(5).

Plaintiff's 135-obscenity-laced calling campaign against Mr. Frazier certainly satisfies the AWVP's requirements in order for the Court to restrain his conduct. As confirmed by Mr. Frazier's Affidavit, the phone calls were alarming and annoying, and—in the case of the death threat—frightening. *Frazier Aff.* ¶ 13–14. The calls were not only limited to Mr. Frazier: Plaintiff has repeatedly called Donna Bowers and, among others, Greg Williamson, METRO's Director of Operations and Human Resources Manager, respectively. *Id.*

Accordingly, Defendants urgently request the Court to enter a no-contact restraining order against Plaintiff pursuant to the AWVP, and require Plaintiff—in the event of any *necessary* communication with Defendants regarding this litigation—to communicate only with their undersigned counsel.

**B.     The Court has Inherent Authority to Dismiss this Action for Plaintiff's Serious Abuse of the Judicial Process.**

Plaintiff's constant attempts to improperly influence this lawsuit (and potentially his pending criminal litigation) by threatening Defendants and their employees are serious and inexcusable abuses of the judicial process that must be addressed. Although the Federal Rules of Civil Procedure do not squarely resolve the extraordinary and unusual circumstances of Plaintiff's misconduct, federal courts nevertheless possess certain "inherent powers," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citing *Link v. Wabash Ry. Co.*, 370 U.S. 626, 630–31 (1962)). That authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* (citing *Chambers v.*

*NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). "Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates. This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993).

> 1. **Unrepresented Parties Are Subject to the Same Expectations of Decorum as All Other Litigants who Appear Before the Court.**

With respect to *pro se* litigants like Mr. Askew who engage in abusive litigation activity, their status as unrepresented parties does not shield them from sanctions. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (the liberal pleading rules of afforded to *pro se* practice is not a vehicle to file abusive documents because "pro se practice is a shield against the technical requirements of a past age; it is not a sword with which to insult a trial judge"). Courts have implemented a range of sanctions concomitant with the egregiousness of the misconduct where *pro se* litigants offend the standards of decorum expected of all litigants appearing before the Court. Where the misconduct is contained to abusive language in court filings, district judges typically issue warnings about the consequences associated with repeated violations. *See e.g. Spears v. Warden FCI Williamsburg*, 2016 WL 2935894, at *1 (D.S.C. May 20, 2016) (warning the *pro se* litigant that Rule 11 sanctions would be issued in the event of future misconduct); *Stebbins v. Stebbins*, 2013 WL 3353865, at *3 (W.D. Ark. July 3, 2013), *order amended and superseded,* 2013 WL 6182991 (W.D. Ark. Nov. 26, 2013), *aff'd,* 575 F. App'x 705 (8th Cir. 2014) (conditioning *pro se* litigant's right to pursue other actions in the Western District of Arkansas on meeting certain conditions, including an ongoing order prohibiting him from "yell[ing] at court staff or us[ing] abusive language in any written or oral communication with the Court or fellow litigants.").

Where the conduct at issue is more extreme, courts do not shy away from imposing severe, terminating sanctions. For instance, where a litigant sent letters to a U.S. Magistrate Judge that were "filled with abusive language, insults, and attacks on the Magistrate Judge's character, fitness for his judicial responsibilities, and religion[,]" the court properly dismissed the action with prejudice. *Koehl v. Bernstein*, 740 F.3d 860, 862 (2d Cir. 2014); *see also Payne v. Am. Corr. Ass'n*, 667 F. App'x 149 (5th Cir. 2016). Terminating sanctions are also appropriate where the litigant repeatedly engaged in abusive conduct in violation of prior court orders. *See Stine v. Fetterhoff*, 2009 WL 2848848, at *5 (D. Colo. Aug. 31, 2009) (where the plaintiff included abusive and offensive language in his filings after being warned to refrain from that conduct, the court—observing that the plaintiff "plainly . . . has no respect for the Court and the judicial process[,]"—dismissed the action with prejudice).

In *Kee v. R-G Crown Bank*, for instance, the U.S. District Court for the District of Utah considered dismissal with prejudice appropriate where the plaintiff, like Mr. Askew, made a significant number of annoying and profanity-laced phone calls to the defendants in his lawsuit. 656 F. Supp. 2d 1348 (D. Utah 2009). Specifically, the plaintiff "began making frequent and harassing phone calls to [Defendants'] employees . . . [and some of their] attorneys" after filing the lawsuit. *Id.* at 1352. These numerous phone calls were often minutes apart, contained foul language, and involved threats of bringing additional unfounded lawsuits against the defendants. *Id.* Despite being advised that these contacts were inappropriate, he nevertheless continued "hurl[ing] abuse" indiscriminately at those he contacted. *Id.* One of the defendants—like Mr. Frazier in the case at bar—even warned the plaintiff that they could not speak directly because the defendant was represented by counsel. *Id.* The plaintiff nevertheless ignored these warnings and continued on with his profanity-laced telephone campaign, causing at least one employee to file a

police report, and one law firm to hire private security. *Id.* at 1353. The district court, observing that it had "inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions in appropriate circumstances," found the sheer volume of the plaintiff's calls—which, like Mr. Askew's, were often minutes apart—to be worthy of severe sanctions. *Id.* (citations omitted). "Indeed, it is appropriate to issue an injunction to prevent harassing and abusive contacts, including repeated phone calls and abusive writings." *Id.* at 1353–54 (collecting cases). As a consequence, the Court entered an order holding as follows:

> Based on the foregoing facts, and those facts submitted to the Court by the Defendants in support of their motions for injunction, the Court hereby **ORDERS that the Plaintiff is enjoined from making any further direct contact, including, but not limited to, in person contact and contact by telephone, fax, and email with any of the Defendants or their Agents** . . . . The Court finds Plaintiff's conduct is sufficiently abusive, offensive, outrageous, wrong, inappropriate, and completely improper under any rules of conduct associated with civil litigation in the United States courts that an injunction is required. Plaintiff is warned that he will be held in criminal contempt if he violates any part of this injunction, with potential sanctions including fines, paying Defendants' attorneys' fees and costs, and imprisonment.
>
> The Court further ORDERS, *sua sponte,* that **based on Plaintiff's outrageous, offensive, and abusive behavior, this case is dismissed in its entirety. Plaintiff cannot do what he has done in this case and continue to be a litigant in this Court.** *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("A primary aspect of [the Court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.") For that reason alone, aside from the Defendants' motions to dismiss, this case is DISMISSED on the basis of Plaintiff's personal outrageous and improper behavior.

*Id.* at 1354 (emphasis added).

Like in *Kee*, the question for this Court to resolve whether Mr. Askew should be allowed to continue litigating his claims against Defendants while also hurling abusive language and death threats against them. As discussed below, Defendants urgently ask the Court to intervene and dismiss this action.

**2. The Court Should Enter Severe, Terminating Sanctions as a Consequence of Plaintiff's Extreme Misconduct Because No Lesser Sanction Would Serve the Twin Goals of Punishment and Deterrence Underlying the Imposition of Sanctions.**

Severe sanctions serve two important purposes in appropriate cases: they hold disobedient plaintiffs like Mr. Askew accountable, and they deter other would-be bad actors from engaging in similarly opprobrious conduct. *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642–43 (1976) (per curiam) (holding that "the most severe in the spectrum of sanctions . . . must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent"). Though courts consider whether lesser sanctions other than dismissal would be appropriate to serve the twin goals of accountability and deterrence, the court is not "constrained to impose the least onerous sanction available, [and] may exercise its discretion to choose the most appropriate sanction under the circumstances." *Mathers v. Abney*, 2017 WL 2371135, at *1 (D.N.D. May 31, 2017) (quoting *Keefer v. Provident Life and Acc. Ins. Co.*, 238 F.3d 937, 939 (8th Cir. 2000)).

Dismissal with prejudice is proper where the Court, after "balancing the policy of giving the plaintiff h[is] day in court against policies of . . . preserving respect for court procedures[,]" finds that a litigant's conduct was sufficiently egregious. *Garrison v. Int'l Paper Co.*, 714 F.2d 757, 659–60 (8th Cir. 1983). "In striking this balance, all the facts and circumstances of the case must be considered." *Id.* (opining that the egregiousness of plaintiff's conduct is the most important factor for the court to consider).

Here, in analyzing the proportionality of Defendants' requested sanction—dismissal with prejudice—against the conduct at issue, the Court should consider one simple question: is there any excuse for Plaintiff's offensive treatment of METRO's staff and his death threats against Mr.

Frazier? Defendants submit that there is no excuse for this conduct. His repeated, obscenity-laced phone calls to METRO were solely within his own province, and he brazenly initiated this harassment campaign despite the fact that he is already the subject of a no-contact order prohibiting him from contacting some of METRO's employees and from entering one of its properties; and despite the fact that he has criminal charges pending against him for his earlier misconduct (including for alleged terroristic threatening). Clearly, lesser sanctions will not suffice to prevent Plaintiff from engaging in further willful, deliberate, and egregious misconduct.

Accordingly, this Court, to both punish Plaintiff's bad conduct and to deter others who would so brazenly hurl death threats at their party opponents, should dismiss Plaintiff's Complaint with prejudice.

## IV.  CONCLUSION

This was not the first occasion on which Mr. Askew threatened to kill METRO employees. In June 2017, Mr. Askew threatened to "go homicidal" on METRO's employees after bragging about allegedly "beating" murder charges. *ECF No. 2*, at P. 13. In October 2018, he threatened to kill METRO operator Johnnie Wesley after Mr. Wesley called the police to intercede when Plaintiff was disrobing on a public bus. *Id.* at P. 12. On March 22, 2019, in his "Motion in Response to Defendants," Mr. Askew concluded his filing as follows: "**Justice or death[.] I mean it from the dept[h]s of my soul**, F.B.I. Don't play games, they know [I] am mad." *ECF No. 21*, at P. 8 (emphasis added). Most recently, on April 23, 2019, Mr. Askew threatened to kill Mr. Frazier.

Mr. Askew's continuing telephone campaign demonstrates the extremes to which he will go in harassing and disrupting METRO's employees and operations. He has made an express death threat against Mr. Frazier over the phone, and against Defendants in his March 22 filing. Defendants respectfully request that the Court immediately issue a restraining order prohibiting

Plaintiff from contacting METRO's employees or from entering METRO's properties or the properties of its employees. The Court should similarly dismiss this litigation with prejudice as a consequence for Plaintiff's misconduct.

          Respectfully submitted,

          */s/ Alexander D. Clark*
          M. Stephen Bingham (ABA 83023)
          Alexander D. Clark (ABA 2017112)
          **CROSS, GUNTER, WITHERSPOON & GALCHUS, P.C.**
          500 President Clinton Avenue, Suite 200
          Little Rock, Arkansas 72201
          Phone: 501-371-9999
          Fax: 501-371-0035
          sbingham@cgwg.com
          aclark@cgwg.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April, 2019, I mailed by first class mail, postage prepaid, the foregoing document to the following non-ECF registrant:

Charles Askew
3409 Avery Road
Little Rock, AR 72209

          */s/ Alexander D. Clark*
          Alexander D. Clark